MAGER, Judge
(dissenting).
The order of the trial court adjudicating the defendant guilty of possession of burglary tools best reflects the essence of my dissent and is hereinafter set forth:
“The State charged that Mr. Biggs and a co-defendant, Richard Lee Harvey, possessed burglary tools on the 14th day of June, 1974. Earlier this year Mr. Biggs’ co-defendant was tried by a jury and found not guilty. Mr. Biggs waived Trial by Jury and proceeded to trial on Friday, November 15th, 1974.
“The testimony reflected that Mr. Biggs was the driver of a Pontiac vehicle which was observed on a rural access road leading to a business known as the Pineridge Nursery from a highway west of Boca Raton, Palm Beach County, and known as Powerline Road. The officer testified that he observed Mr. Biggs’ Pontiac and a Chevrolet vehicle apparently parked together at around 2:30 a. m. on the morning of June 14th.
“The officer endeavored to stop the two cars after they left the rural access road and turned south on Powerline Road. He stopped the Pontiac, but, because he was unaccompanied by a supporting vehicle, there was not another car to stop the Chevrolet and this second car turned on the highway and proceeded north.
“The Deputy instructed Mr. Biggs and his passenger to remain at the scene and went in pursuit of the Chevrolet, which subsequently drove off of the road. The two occupants of the Chevrolet fled and were not apprehended.
“The Deputy then proceeded south only to find that the Pontiac was underway in a southerly direction once again. He radioed ahead to the Broward County Sheriff’s Office and they stopped the Pontiac vehicle and Mr. Biggs.
“From the Pontiac the officer retrieved two pairs of gloves, screwdrivers, a knife and pliers, all from the floorboard section of the passenger side of the vehicle. The officer also found a walkie-talkie on the passenger side of the Pontiac. A corresponding walkie-talkie was taken from the Chevrolet. The officer testified that both walkie-talkies were in working order.
“From the trunk of the Pontiac the officer secured tin cutters and large bolt cutters.
*417 “The defendant’s testimony was that he believed the tools and gloves in the front seat were the property of his companion and that the walkie-talkie was the property of his little brother. He stated that the tin cutters and bolt cutters in his trunk were his equipment which he used in his part-time work at the Acme Scrap Metal business and the May Air Conditioning business, both of which establishments are located near to his residence in Pompano in Broward County.
“The defendant’s argument seems to be based primarily on the fact that in order to be guilty of this particular offense, the State must establish that the tools are associated with some immediate or nearby illegal activity either past or threatened.
“The defendant relied on the following cases: Burnette v. State, 258 So.2d 470 (3rd DCA 1972); Mesenbrink v. State, 231 So.2d 852 (3rd DCA 1970); Diaz v. State, 82 So.2d 135 (Fla. 1955) (Chief Justice Drew’s dissenting opinion); Rinehart v. State, 114 So.2d 487, (2nd DCA 1959) and Foster v. State, 286 So. 2d 549 (Fla. 1973).
“The defendant’s emphasis is that in the possessory offense here under consideration, it is of the essence that the evidence justify the trier of facts in the finding that the accused possessed the tools in question with the intent to employ them in the commission of burglary or related crime.
“The flight of an accused shortly after a crime is committed permits the trier of the fact to reach an inference that the accused was implicated therein; this is an inference and not a presumption. 13 Fla.Jur. Evidence, §§ 95 and 138. As Mr. Justice O’Connell quoted from an earlier Florida case in Daniels v. State, 108 So.2d 755, 760 (Fla. 1959):
'* * * The rule is that, when a suspected person in any manner endeavors to escape, or evade a threatened prosecution, by flight, concealment, resistance to a lawful arrest, or other ex post facto indication of a desire to evade prosecution, such fact may be shown in evidence as one of the series of circumstances from which guilt may be inferred. (Citations omitted)’
“While the circumstances of the defendant’s unrebutted testimony about the presence of the tools in his car and the nature of his work and the fact that his co-defendant has been found not guilty by a trial jury are all factors which weigh in his favor, I am persuaded beyond a reasonable doubt that the State has overcome its burden of proving that this defendant had a fully formed, conscious intent and purpose to use or employ, or to allow some other person to use or employ, the implements disclosed by the evidence for the purpose of cutting through, forcing or breaking open some building, vault, safe or other depository in order to steal therefrom money or property.
“In addition to flight on the part of the defendant is the successful flight and concealment of the parties in the Chevrolet vehicle and, most significantly of all, perhaps, the presence of the two operating walkie-talkies, one of which was found in each car. The testimony of the defendant that he was hunting in the vicinity of this nursery for rabbits is not creditable in the view of the Court.
“This Court is not unmindful that the doctrine of constructive possession is undergoing appellate change and metamorphosis; see, for example: Thomas v. State, 297 So.2d 850 (4th DCA 1974) and Atkins v. State and Mann v. State, Cases 73-1311 and 73-1312, 4th DCA, Opinion filed October 18th, 1974 [301 So.2d 459],
“Still, it continues to be the law of this State that the trier of the fact can *418 find that possession is either sole or joint.
“ACCORDINGLY, the Court finds that the defendant is guilty beyond all reasonable doubt of possession of burglary tools as charged in the Information.

Based on the foregoing I would affirm.